UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 06-301(EGS) |
| v. | : |
| MICHAEL J. PETERS, | : |
| Defendant. | : |

**FILED**
NOV 21 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Cr. P. 11, defendant Michael J. Peters agrees and stipulates as follows:

From April 2002 to August 2003, Michael J. Peters (Peters) worked as a Senior Analyst in the Office of the Administrator for the United States National Aeronautics and Space Administration (NASA), located at 300 E Street, S.W., Washington, D.C. Peters' job at NASA was to evaluate and recommend financial software so that NASA's senior leadership could access the various NASA centers' budgets and expenditures from a central location. Peters recommended that NASA purchase a software product from a company known as Open System Sciences (OSS). At the same time, OSS was paying Peters, through intermediaries, to develop and market the OSS software product. In addition, Peters intentionally omitted information about OSS's payments to him and disguised the payments on his Public Financial Disclosure Report which he submitted to NASA.

During the time that Peters worked for NASA, that is, from April 2002 until August 2003, Peters had an agreement with the owner of OSS that he would market OSS's software product in exchange for OSS paying money to a company identified in this pleading as C.D.C. As agreed, the owner of OSS paid C.D.C., which then forwarded the majority of the money to

Peters. As a result, during the time that Peters was a NASA employee, Peters received 16 checks worth about $25,500 from OSS, through C.D.C. These checks were issued to Peters' company, Greenlea Associates. C.D.C.'s president asked Peters whether he (Peters) could market the software product for OSS, given that Peters was a government employee at NASA, and Peters assured C.D.C.'s president that it was not a conflict as his job did not entail purchasing or contracting.

Contrary to his assurances to C.D.C.'s president, Peters promoted and recommended the purchase of the OSS software product at NASA. Peters introduced OSS and its owner to NASA officials and identified OSS as being a company which could meet NASA's financial management needs. Peters arranged for a demonstration of the OSS software product to NASA officials at NASA headquarters in the District of Columbia and elsewhere; the owner of OSS was present and observed Peters as he promoted the OSS software product at NASA.

In addition, because of Peters' government salary level, Peters was required to complete an Executive Branch Personnel Public Financial Disclosure Report. On this Public Financial Disclosure Report for calendar year 2002, Peters listed $18,000 of income from Greenlea Associates/Greenlea Farm, identifying the income as "equine consulting services." Peters failed to list anywhere on his Public Financial Disclosure Report any income or payments from C.D.C. or OSS or any employment with C.D.C. or OSS. These statements were material to NASA, as the truthful statements would have caused NASA to terminate Peters or reassign his responsibilities at NASA.

Peters also was required to file a Questionnaire for National Security Position, which requires the federal employee to list all employment activities, including part-time work. Peters

failed to list OSS or C.D.C. anywhere on the Questionnaire for National Security Position form.

When confronted by special agents from the Federal Bureau of Investigation and NASA's Office of Inspector General, Peters admitted that he received payments from OSS indirectly through C.D.C. Peters admitted to the agents that OSS paid Peters to be an advisor and to market its software product. Peters also admitted that while he was working at NASA, he was involved in recommending the use of the OSS software product. Peters stated that he was concerned about the conflict of interest when he was at NASA and did not report his OSS employment to NASA officials because he knew it would cause trouble for him.

In sum, from April 2002 to August 2003, Michael J. Peters was an employee of NASA, an agency of the United States government, with his offices located in the District of Columbia. Peters received money, that is, approximately $25,500 from OSS. Peters participated personally and substantially in a matter which he knew that he, personally, had a substantial financial interest, in that he recommend OSS product to be purchased by NASA. In addition, Peters falsely reported to NASA that he received money through Greenlea Associates/Greenlea Farm for his work on "equine consulting services" well knowing that he received money

3

through Greenlea Associates/Greenlea Farm for his work in recommending the OSS product to NASA; Peters made this statement deliberately and intentionally, and knowing it to be false.

          Respectfully submitted,

          JEFFREY A. TAYLOR
          United States Attorney
          for the District of Columbia

By: _____
          VIRGINIA CHEATHAM
          Assistant U.S. Attorney
          Bar No. 411980
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 514-9732

## DEFENDANT'S ACCEPTANCE

    I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 11/21/06                   _____
                                            Michael J. Peters
                                            Defendant

I concur with his decision to stipulate to this Statement of Offense.

Date: Nov. 21, 2006             _____
                                            Joe S. Ritenour, Esq.
                                            Attorney for the Defendant